**James Herbert ABNEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–97–00172–CR, 14–97–00173–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 26, 1999.

Rehearing Overruled Sept. 23, 1999.

Michael P. Fosher, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and DRAUGHN.*

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

Appellant, James Herbert Abney, was charged with the felony offenses of murder and attempted capital murder, to which he pleaded not guilty. After the jury found him guilty, they assessed a sentence of life imprisonment in the Department of Criminal Justice, Institutional Division, and a $10,000 fine. Appellant challenges his conviction with ten points of error. We affirm.

## Background

On August 1, 1996, Kervin Emmanuel, Christopher Bernard King, John Allen, Nunnie Doucet, and appellant were driving in Baytown in a vehicle belonging to Emmanuel's sister. Appellant, a member of a gang whose colors were blue and white, told the driver, Emmanuel, to drive to the east side of Baytown where gang members whose color was red resided.

During this time, Gaston Gurrola and Juan Diaz, the complainants, were also driving around Baytown with Isidrio Garcia in a red Jeep. While driving, they saw Michael Gonzales in another vehicle and began following him. Gonzales stopped driving and asked the complainants why they were following him, to which they responded they thought he was someone else. While the complainants were talking to Gonzales, appellant's vehicle drove up and appellant pulled out a large caliber weapon from a bag he was carrying, leaned out of the car window, and began firing at the complainants in the Jeep.

After several shots were fired, appellant's vehicle left the scene. Some time thereafter, appellant and several other individuals returned to the scene of the shooting in another vehicle. After they left, Gonzales got out of his vehicle and approached the Jeep. He saw that Gurrola and Diaz, although still conscious, had been shot and were covered in blood. When emergency medical services arrived at the scene, however, Diaz was unconscious and barely breathing. An autopsy report later revealed that Diaz died from a gunshot wound to his head and one to his neck. Gurrola had received two severe gunshot wounds resulting in permanent damage to both of his upper arms, one gunshot wound to his chest, and one to his abdomen.

---

* Senior Justice Joe L. Draughn sitting by assignment.

Baytown police officer Tim Pettigrew began investigating the shooting and later spoke with Emmanuel who confirmed that he had been the driver of the vehicle from which the complainants had been shot. Officer Pettigrew later showed a photo array to Gonzales who immediately identified appellant from the photos. Officer Pettigrew then went to the Harris County District Attorney's Office, and a warrant was obtained for appellant's arrest.

## Discussion

■ In his first point of error, appellant contends the trial court erred by denying the defense motion to strike a juror who didn't understand English well enough to participate. Under his second point of error, appellant argues the court erred in denying his motion for new trial based upon the defense motion to strike the juror.

The record reflects that after the jury was selected and sworn, and the remaining veniremembers had been discharged, the court, the prosecutor, and defense counsel questioned the juror on his ability to read and write English. The following day, the court stated that it had considered the juror's testimony and found the juror competent to read and write English. We believe the trial judge was in the best position to resolve any conflicting testimony provided by the juror. Furthermore, the court also emphasized that no one questioned the venire members about their ability to understand English until after the jury had been sworn and instructed. By failing to make an initial inquiry into whether the members of the panel could understand English, appellant has waived any error. *See Van Dalen v. State,* 789 S.W.2d 334, 336 (Tex.App.—Houston [14th Dist.] 1990, no pet.); *Guzman v. State,* 649 S.W.2d 77, 79 (Tex.App.—Corpus Christi 1982, no pet.). Appellant's first and second points of error are therefore overruled.

■ In his third point of error, appellant contends he was denied effective assistance of counsel when the trial judge refused to allow defense counsel to make an opening statement immediately after the State's opening statement. In his fourth point of error, appellant further contends the trial court committed reversible error in its refusal to allow counsel to make an opening statement immediately following the prosecutor's statements despite the fact that the statute the judge purported to read clearly permitted it.[1]

■ Article 36.01(b) of the Code of Criminal Procedure provides that "[t]he defendant's counsel may make the opening statement for the defendant immediately after the attorney representing the State makes the opening statement for the State." Tex.Code Crim. Proc. Ann. art. 36.01(b) (Vernon Supp.1999). Consequently, we find the trial court's refusal to permit appellant's counsel to make his opening statement following the State's opening statement constituted error. However, this does not end our inquiry. We must next determine if the error was harmful under Texas Rule of Appellate Procedure 44.2. We note initially that the right to make an opening statement is a statutory right, not a constitutional right. *See Moore v. State,* 868 S.W.2d 787, 789 (Tex. Crim.App.1993). Therefore, the error in this case involves Rule 44.2(b) which provides that "[a]ny [nonconstitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

■ The purpose of article 36.01(b) is to communicate to the jury the party's theory of the case in order to aid the jury to evaluate the evidence as it is being presented. *See Twine v. State,* 970 S.W.2d

1. The statute at issue is article 36.01 of the Code of Criminal Procedure.

18, 19 (Tex.Crim.App.1998) (McCormick, J., concurring). In the present case, we note appellant's counsel was not prevented from making an opening statement; rather, he made an opening statement at the beginning of the defense's case-in-chief. Further, the record reveals that, in his brief opening statement, defense counsel merely reminded the jurors of the State's burden of proof and that it remained with the State. Notably, there was no mention of an alibi defense, but only that the jurors should keep open minds throughout the trial. Appellant does not demonstrate what harm, if any, resulted from giving his opening statement at the beginning of his case-in-chief. In light of these facts, while the trial court's refusal to permit the defense to make its opening statement following the State's opening statement was error, we cannot find under the circumstances of this case that it had a substantial and injurious effect or influence in determining the jury's verdict. Appellant's third and fourth points of error are overruled.

█ In his fifth point of error, appellant contends the trial court erred in allowing testimony concerning a witness's identification of appellant because the testimony was the product of an impermissibly suggestive identification procedure. Specifically, appellant claims the witness's in-court identification of appellant was inadmissible because it was based solely upon his identification of appellant in a photo array, rather than what the witness actually saw at the time of the offense.

█ We acknowledge that identification procedures that are unnecessarily suggestive violate a suspect's right to a fair trial under the Fourteenth Amendment to the United States Constitution. *See Woodard v. State*, 931 S.W.2d 747, 750 (Tex.App.—Waco 1996, no pet.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). To establish the inadmissibility of an in-court identification, a defendant must prove two elements: (1) the pretrial identification

procedure was impermissibly suggestive; and (2) the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *See Manson*, 432 U.S. at 113, 97 S.Ct. 2243. Further, the burden is on the defendant to show by clear and convincing evidence that the in-court identification is unreliable. *See Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim.App.1992); *Madden v. State*, 799 S.W.2d 683, 695 (Tex.Crim.App.1990).

█ Appellant contends that the photo array was impermissibly suggestive because the witness was told the array may include a suspect. However, it is well established that a pretrial identification procedure is not impermissibly suggestive merely because a witness may have believed one of the individuals in the photo array or lineup was a suspect. *See Harris*, 827 S.W.2d at 959; *Webb v. State*, 760 S.W.2d 263, 272 (Tex.Crim.App.1988) (acknowledging that in a substantial number of live lineups the identification witness will presuppose police have reason to believe one of the participants is the perpetrator). Moreover, appellant fails to explain how this fact would render the pretrial identification procedure impermissibly suggestive. A finding that a challenged pretrial identification procedure was not impermissibly suggestive eliminates the need to determine whether the procedure gave rise to a very substantial likelihood of misidentification. *See Ford v. State*, 919 S.W.2d 107, 117 (Tex.Crim. App.1996). Because we find appellant has failed to prove by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive, we do not reach the second prong in our analysis. Appellant's fifth point of error is therefore overruled.

█ In points of error six and seven, appellant contends the trial court erred when it permitted the State, during its cross-examination of defense witnesses Cory Doucet and Takesha Bush, to ask whether the witnesses had provided the

police or district attorney's office with exculpatory information.[2] In his eighth point of error, appellant also argues the trial court allowed improper direct examination of Officer Pettigrew when it permitted the prosecutor to ask him if anyone had given the police exculpatory evidence. In point of error nine, appellant claims the trial court erred by allowing the prosecutor to ask questions which commented on appellant's post-arrest silence.

 Appellant argues the prosecutor should not have been permitted to ask some of the defense witnesses why, after they learned appellant had been arrested for the charged offenses, they failed to come forward and inform the police that appellant was with them at the time the offenses were committed. Appellant contends the prosecutor's questions directed to the defense witnesses and Officer Pettigrew inquiring about whether any exculpatory evidence was given to the police or the district attorney's office improperly shifted the burden of proof to appellant to prove his innocence. We disagree. Rather, the prosecutor's questions challenged the credibility of the testimony of the alibi witnesses. Additionally, we do not find that the questions constituted a comment on appellant's post-arrest silence, as they were clearly directed solely to the specific witnesses called by appellant's counsel

during the defense's case-in-chief. The trial court did not err in overruling defense counsel's objections to these questions. We consequently overrule points of error six through nine.

 In his tenth point of error, appellant contends the trial court erred by denying appellant's father an opportunity to give opinion testimony regarding his son during the punishment phase of the trial. We find this contention without merit. The record reveals the prosecutor objected to the *form* of the question only, not its substance.[3] That appellant's counsel declined to rephrase the question was likely a strategic decision. By sustaining the prosecutor's objection, the trial court did not deny appellant's father the opportunity to give opinion testimony about his son. We therefore overrule appellant's tenth point of error.

Accordingly, we affirm the judgments of the trial court.

**2.** Cory Doucet and Takesha Bush were presented by the defense as alibi witnesses.

**3.** The following exchange took place during the punishment phase of the trial:

Mr. Fosher: Now, what type of person do you believe your son is?

Mr. Anderson: Judge, I'll object. That's an improper question on the punishment.

Mr. Fosher: Judge, I think he has a right to state his opinion about his own son.

Mr. Anderson: I understand that, but he has to ask the question properly so that we follow the rules.

The Court: Approach the bench, please.

(WHEREUPON the following was heard at the Judge's bench.)

The Court: What rule are you talking about?

Mr. Anderson: The problem is, Judge, if he asks what kind of a person your son is,

he's kind of making it a hybred [sic] question, that doesn't open up the door to any character questions. If he asks what type of person he is, as far as is he [a] peaceful and law-abiding person, does he have a reputation for being peaceful and law-abiding, that sort of thing, these prescribed questions, then we're going by the rules, and then I can ask proper questions in response. Otherwise, it keeps me from being able to do that, which is what the statute says.

The Court: I understand. You understand what he is saying?

Mr. Fosher: I'm just thinking, I guess he's entitled to [ ] give an opinion of his own son.

The Court: The objection is sustained. Proceed.