Opinion issued March 3, 2005 
















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00236-CR
__________
 
FRANKLIN CARL JONES, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 977894
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Franklin Lee Jones, guilty of aggravated robbery and
assessed his punishment at confinement for 50 years. In three points of error,
appellant contends that (1) the trial court erred in admitting pretrial and in-court
identification evidence, (2) the evidence was factually insufficient to support his
conviction, and (3) the trial court erred in denying his motion for mistrial based on
improper jury argument. We affirm.
Factual and Procedural Background
          Jessica Mora, the complainant, testified that on April 4, 2003, she was the
manager of a Dollar General Store located on Wilcrest Street in Houston. That
morning, as Mora prepared to open the store with Jacquelyn Petry, the store’s
assistant manager, Mora noticed a man standing outside the store who was wearing
a blue and white shirt, jeans, and a black “do rag.” She motioned to him that the store
would open in ten minutes. Mora went to the back of the store to continue her
preparation, and, when she returned to the area of the store near the registers, she
again noticed the man and motioned to him that the store would open in five minutes. 
At this point, Mora could see the man’s face “clearly.” However, the man’s “do-rag”
obscured part of the man’s forehead. Shortly thereafter, Mora unlocked and opened
the store’s doors. Mora looked toward the same man, who was still standing outside
of the store, and greeted him. The man looked at her, and Mora again saw his face. 
Mora returned inside the store and, when the man entered the store, Mora again
greeted the man. The man looked at her, and Mora “looked square” at the man’s face. 
Mora returned to the back of the store to continue to unload merchandise. As she was
unloading merchandise, Mora noticed the same man jogging up to her. The man
grabbed Mora, showed her a gun, and stated, “This is a robbery.” After placing the
gun to Mora’s head, the man dragged her toward the store office and demanded the
keys to the office. Mora replied that Petry, her co-worker, had the keys. 
          The man then hollered to an accomplice, who had since entered the store and
restrained Petry, and instructed the accomplice to bring Petry to the back of the store
with the keys. As the accomplice pushed Petry to the back of the store, Mora noticed
that the accomplice was dressed in black, had a bandage under his eye and wore a
black leather cap. The accomplice also had a gun pointed at Petry. Pursuant to the
assailants’ instructions, Petry opened the office door and the store’s safe, which was
located inside the office. The accomplice took the cash from the safe. The man then
handed Mora a bag and instructed her to place a box of rolled coins from the safe into
the bag. Mora complied and again looked at the man. The assailants tied up Mora
and Petry in the office, and left the store.  
          Shortly after the robbery, Mora moved to Dallas, where she was contacted by
Houston Police Detective D. Matties. On June 24, 2003, Matties traveled to Dallas
to show Mora a photographic array. Prior to showing Mora the array, Matties told
Mora not to make a decision if she was uncomfortable doing so. Matties also
provided Mora with a written admonition stating, among other things, that the “group
of photographs may or may not contain a picture of the person or persons involved
in the crime now being investigated.” The admonition further instructed Mora to
“Keep in mind that hairstyles and facial hair may be easily changed. . . . You are not
under any obligation to pick anyone from the presentation.” Upon being presented
with the array, Mora “immediately” selected appellant as the man who had grabbed
her and placed the gun to her head. At trial, Mora positively identified appellant as
the first man who had entered the store and grabbed her during the robbery.
          Petry testified that before the store opened on the morning of April 4, 2003, she
noticed a man outside the store and later saw the same man, wearing black jeans, a
light blue shirt with white stripes, and a black “do-rag” on his head, enter and walk
to the back of the store. Five minutes later, another man (referred to as “the
accomplice”) dressed entirely in black and wearing a baseball cap, entered the store. 
The accomplice subsequently approached Petry, put a gun to her head and informed
her that the store was being robbed. Petry noticed that the accomplice wore a band-aid under one of his eyes. The accomplice ordered Petry to open the register, and he
took approximately one hundred dollars from the register. The accomplice then
ordered Petry to the back of the store, where she saw that the first man who entered
the store was holding Mora with a gun to her back. Petry was ordered to open the
door to the store’s office and the store safe. Before opening the safe, Petry looked at
Mora and the man holding Mora. The man who had been holding Mora tied up Petry,
while the accomplice took money from the safe. Both men then left the store.
          Petry testified that, one or two weeks after the robbery, Becky Morrison and
her daughter Kelly Morrison came to the store. Becky proceeded to tell Petry that she
believed her boyfriend, appellant, was involved in the robbery. Becky provided Petry
with appellant’s name and date of birth. Petry testified that Becky did not provide her
with a photograph of appellant. 
          On June 2, 2003, four days after Petry provided the information supplied by
Becky to Detective Matties, Detective Matties presented Petry with a photographic
array consisting of six photographs. Before presenting Petry with the array, Matties
instructed Petry that she should not feel obligated to identify anyone. Petry did not
see the accomplice in the array. However, Petry told Detective Matties that the man
wearing the black “do-rag” who had held Mora during the robbery was in one of two
of the pictures in the array. At trial, Petry positively identified appellant as the person
who grabbed and restrained Mora during the robbery.
          Michael Barry testified that, on the morning of April 4, 2003, he entered the
store but did not see anyone inside. Approximately fifteen minutes later, he observed
two men exiting the store. Barry saw the profile of the second man leaving the store
and noticed he was wearing a black “do-rag.” On June 2, 2003, Matties presented
Barry with a photographic array and instructed Barry that he was under no obligation
to identify anyone. Barry selected a photograph and then changed his mind and
selected the photograph of appellant. Barry stated that he believed the man pictured
in the photograph he selected was the second man he saw exiting the store, but he was
not sure. 
          Becky Morrison testified that she had previously been in a relationship with
appellant and that appellant had previously lived with her and her daughter, Kelly.
During a phone conversation in the Morrison home, Kelly had heard appellant talk
about “money” that had been “deposited,” and two cross streets in Houston, Wilcrest
and Bissonet. Kelly later saw appellant with a box containing rolls of coins, ties, and
duct tape. After hearing appellant’s conversation, Kelly became worried and told her
mother. Becky and Kelly testified that they went to the store because they were
concerned that appellant may have been involved in a robbery of the store. Becky
spoke with “the manager” (Petry) and learned that the store had recently been robbed. 
Petry provided a description of the robbers, and Becky provided Petry with
appellant’s name and date of birth. Although Becky testified that she did not present
anyone at the store, including Petry, with a picture of appellant, Kelly testified that
she thought her mother had presented the manager with a picture of appellant, but was
not sure.
          Prior to trial, appellant filed a motion to suppress any identifications made by
Jessica Mora, Jacquelyn Petry, and Michael Barry. Appellant asserted that the
photographic array used by Detective Matties “was so impermissibly suggestive that
it induced the witnesses to identify” him. Appellant argued that the impermissibly
suggestive array gave rise to a substantial likelihood of irreparable misidentification. 
The court, after argument, denied the motion to suppress the identifications. 
Identification
          In his first point of error, Appellant argues that, because the photographic array
and the procedures used by the police in presenting it to witnesses Jessica Mora and
Jacquelyn Petry were unduly suggestive, in violation of his constitutional rights to
due process,


 the pretrial and in-court identifications of appellant by these two
witnesses should have been suppressed.


 
          The standard of review on a question of whether an in-court identification
should not have been admitted due to the taint of an impermissibly suggestive pretrial
identification procedure depends upon the type of question presented to the reviewing
court. Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Burkett v.
State, 127 S.W.3d 83, 86 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Because
the question in this case is a mixed question of law and fact that does not turn on the
evaluation of the credibility and demeanor of the witnesses, we apply a de novo
standard of review. Burkett, 127 S.W.3d at 86.
          A pretrial identification procedure may be so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law. Simmons v. United States, 390 U.S. 377, 384, 88 S.
Ct. 967, 971 (1968); Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995).
A court should conduct a two-step analysis to determine the admissibility of an
in-court identification and ask (1) whether the pretrial identification procedure was
impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure
created a very substantial likelihood of irreparable misidentification. Simmons, 390
U.S. at 384, 88 S. Ct. at 971; Barley, 906 S.W.2d at 33. A defendant bears the burden
of establishing by clear and convincing evidence that the pretrial identification
procedure was impermissibly suggestive. Barley, 906 S.W.2d at 33-34. A court must
examine the totality of the circumstances surrounding the identification. Id. at 33.          If a court finds that a pretrial identification procedure was impermissibly
suggestive, it must then consider the factors enumerated in Neil v. Biggers to
determine whether the suggestive procedure gave rise to a substantial likelihood of
irreparable misidentification. 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972). These
non-exclusive factors are (1) the witness’s opportunity to view the criminal, (2) the
witness’s degree of attention, (3) the accuracy of the witness’s description of the
suspect, (4) the level of certainty at the time of confrontation, and (5) the time
between the crime and confrontation. Id. at 199-200. These five factors are treated
as issues of fact and are viewed in the light most favorable to the trial court’s ruling. 
Ibarra v. State, 11 S.W.3d 189, 195-96 (Tex. Crim. App. 1999). The five factors are
then reviewed de novo against “the corrupting effect” of the suggestive pretrial
identification procedure. Id.; Loserth, 963 S.W.2d at 773-74.
          Appellant asserts that the photographic array itself was impermissibly
suggestive because “he stands out as the exclusively darkly complected black male.” 
Appellant concedes that the record is almost completely devoid of any description of
the assailants’ facial features, but argues that “[s]hould the assailant have been darkly
complected, Appellant would have been the singular possibility within the array.” 
Appellant also argues that because Detective Matties drove from Houston to Dallas
on a scheduled trip solely for the purpose of presenting the photographic array to
Mora, he impliedly suggested that “the suspected culprit was in the array.”
          Appellant correctly notes that suggestiveness may be created by the manner in
which a pretrial identification procedure is conducted. Barley, 906 S.W.2d at 32-33. 
For example, a police officer may point out the suspect or suggest that a suspect is
included in a lineup or photographic array. Burkett, 127 S.W.3d at 87. “Also, the
content of a lineup or photographic array itself may be suggestive if the suspect is the
only individual who closely resembles the description given by the witness.” Id. 
“Furthermore, an individual procedure may be suggestive or the cumulative effect of
procedures may be suggestive.” Id.
          However, in regard to the content of the photographic array presented by
Detective Matties to Mora and Petry, all of the persons pictured are African-American
males, are dressed in civilian clothes, appear to be similar in age, and have comparable
hairstyles and facial features. Despite appellant’s contentions, several of the men in
the array have dark complexions, and the differences in the tone of complexion are not
significant. Although every photographic array must contain photographs of
individuals who fit the rough description of a suspect, it is not essential that all
individuals be identical in appearance. Buxton v. State, 699 S.W.2d 212, 216 (Tex.
Crim. App. 1985) (stating that varying heights, weights, and skin colors of persons in 
photographic array do not render array impermissibly suggestive); Tell v. State, 908
S.W.2d 535, 539 (Tex. App.—Fort Worth 1995, no pet.) (despite “some differences
in weight, height and complexion,” none of men pictured differed unreasonably from
description of suspect, and defendant did not stand out as “distinctively different”
from other men). “Neither due process of law nor common sense requires such
exactitude.” Burkett, 127 S.W.3d at 87 (citing Giesberg v. State, 945 S.W.2d 120,
125-26 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d)). Accordingly, we hold that
the content of the photographic array was not impermissibly suggestive.
          We also conclude that the manner in which the pretrial identification procedures
were conducted was not impermissibly suggestive. Although Detective Matties drove
to Dallas on a scheduled trip to meet Mora to present her with the array, Mora testified
that she felt there was nothing unusual about Detective Matties traveling to Dallas to
present the array. The record reveals that Matties admonished Mora that she was not
obligated to select anyone and that the suspect may not have been included in the
array. Yet, Mora identified appellant “immediately.” Furthermore, even if the fact
that Matties traveled to Dallas somehow suggested to Mora that a suspect was
included in the array, such a suggestion would not itself render the pretrial
identification impermissibly suggestive because a complaining witness normally
assumes that a photographic array includes a suspect. See Harris v. State, 827 S.W.2d
949, 959 (Tex. Crim. App. 1992); Webb v. State, 760 S.W.2d 263, 272 (Tex. Crim.
App. 1988); Burkett, 127 S.W.3d at 87-88; Abney v. State, 1 S.W.3d 271, 275 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d). 
          Appellant also argues that Petry’s identification was impermissibly suggestive
because Petry was presented with a photograph of appellant by Becky Morrison prior
to seeing the photographic array. To support this argument, appellant relies solely on
the testimony of Kelly Morrison, who testified that she thought her mother had a
picture of appellant when they visited the store, but was not sure. However, Petry
testified that Becky did not present her with a picture of appellant, and Becky testified
that she did not present Petry or anyone else at the store with a picture of appellant. 
          Even if Kelly’s testimony was sufficient to create a fact issue concerning
whether or not Petry viewed a photograph of appellant before Detective Matties
presented her with the array, appellant failed to make a specific and timely objection
on this issue at the motion to suppress hearing or at trial. See Havard v. State, 800
S.W.2d 195, 211 (Tex. Crim. App. 1989) (stating that, in order to complain of error
on appeal, party must make specific and timely objection). Appellant may not, on
appeal, argue a reason for error that was not urged at trial. Id. Because appellant
failed to make an objection on this issue at the suppression hearing and during trial,
appellant has not preserved this issue for our review.
           Because appellant has not demonstrated, by clear and convincing evidence, that
either the content of the photographic array or the manner in which the pretrial
identification procedure was conducted was impermissibly suggestive, we need not
address appellant’s contention that the pretrial procedure resulted in a substantial
likelihood that Mora’s and Petry’s in-court identifications were in error. Accordingly,
we hold that the trial court did not err in admitting into evidence Mora’s and Petry’s
identifications of appellant.We overrule appellant’s first point of error. Factual Sufficiency
          In his second point of error, appellant argues that the evidence was factually
insufficient to support his conviction because the record clearly indicates that
appellant was misidentified by the witnesses. 
          In conducting a factual-sufficiency review, we view all of the evidence
neutrally, not in the light most favorable to the verdict, and we will set aside the
verdict “only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004); see Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim.
App. 2000). 
          Appellant’s factual sufficiency challenge focuses on Mora’s and Petry’s
testimony that the accomplice, and not appellant, wore a band-aid under one of
his eyes during the robbery. Appellant notes that when the Morrisons went to the
store to inquire about whether the store had recently been robbed, the Morrisons
told Petry that appellant wore a band-aid under one of his eyes and Petry told the
Morrisons that one of the robbers wore a band aid under one of his eyes. The
record indicates that this may have been one fact used by the Morrisons to
confirm their suspicions that appellant was involved in the robbery. Yet Mora
and Petry’s testimony indicates that it was the accomplice and not the appellant
who wore a band-aid under his eye during the robbery. Appellant argues that
Mora’s and Petry’s identifications “must have been flawed” because they conflict
with the Morrisons’ testimony. The Morrisons’ testimony, however, does not go
so far. Neither Becky nor Kelly testified that appellant wore a band-aid on the
day of the robbery; they were not witnesses to the robbery and did not have
personal knowledge of the appellant’s appearance at the time of the robbery. 
Furthermore, even if there were discrepancies in the testimony of the State’s
witnesses, the jury, as the fact finder, was entitled to reconcile any discrepancies. 
Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).
          Both Mora and Petry identified appellant as the person who grabbed and
restrained Mora during the robbery. Barry identified appellant as the second
person he saw leaving the store. Kelly Morrison testified that she observed
appellant with a box of rolled coins sometime after the date of the robbery. 
Viewing all of this evidence neutrally, we conclude that the evidence was not so
weak that the verdict was clearly wrong or manifestly unjust and that the
contrary evidence was not so strong that the standard of proof beyond a
reasonable doubt could not have been met. Accordingly, we hold that the
evidence was factually sufficient to support appellant’s conviction.
          We overrule appellant’s second point of error. 
Improper Jury Argument
          In his third point of error, appellant contends that the trial court erred in
not granting his motion for mistrial after the State shifted the burden of proof
and commented on his failure to testify.  
          Appellant complains about comments made by the State in the following
exchange during jury argument:
[State]:                            But all this evidence was corroborated by
other witnesses. Michael Barry, Jacquelyn
Petry, Jessica Mora, who had no idea who
these people are. He is guilty of this offense
and you never heard anyone come up here
and say, “Franklin Jones didn’t do it, he
was with me that morning.”
 
[Defense Counsel]:         Judge, I’m going to object. Improper
argument. I move for a mistrial.
 
[State]:                            She put on a case, Judge. She did not–
 
[Defense Counsel]:         I again, Your Honor– 
 
[Trial Court]:                 Come here. 
 
(Bench Conference.)
 
[Trial Court]:                 Wrap it up. 
 
[State]:                            The defense has no burden of proof, you
understand that. The Court has advised
you of that. The State is not shifting the
burden in any way, shape or form.
 
[Defense Counsel]:         I’m going to object to him– 
 
[State]:                            That is proper argument, Your Honor.
 
[Defense Counsel]:         Him characterizing his closing argument.
 
[Trial Court]:                 Overruled. Let’s move along. Let’s wrap it
up.
 
(End of Bench Conference)
 
[State]:                            Thank you. And what you didn’t hear was
someone come in here and say this
Defendant was somewhere else. 
 
[Defense Counsel]:         Judge, I am going to object again.
 
[Trial Court]:                 Overruled.
 
          (Emphasis added.) 
Here, appellant first generally objected to the prosecutor’s argument as 
“improper argument” and later made two general objections with no stated basis. 
Appellant’s general objections did not apprise the trial court of the specific
grounds of his complaints, and thus the objections were insufficient to preserve
error. Tex. R. App. P. 33.1; Hougham v. State, 659 S.W.2d 410, 414 (Tex. Crim.
App. 1983); Huggins v. State, 795 S.W.2d 909, 912 (Tex. App.—Beaumont 1990,
pet. ref’d); Lowe v. State, 676 S.W.2d 658, 662 (Tex. App.—Houston [1st Dist.]
1984, pet. ref’d); Tapley v. State, 673 S.W.2d 284, 288-89 (Tex. App.—San
Antonio 1984, pet. ref’d). Accordingly, appellant presents nothing for our review.We overrule appellant’s third point of error.
                                                              Conclusion
 
                    We affirm the judgment of the trial court.
 
 
 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
 
          Panel consists of Justices Nuchia, Jennings, and Alcala
 
          Do not publish. Tex. R. App. P. 47.2(b)