Affirmed and Opinion filed July 21, 2005









Affirmed and Opinion filed July 21, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01325-CR

____________

 

REYNALDO
TORIBIO ROJAS, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

____________________________________________________________

 

On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No.
940,470

____________________________________________________________

 

O P I N I O N

Appellant Reynaldo Toribio Rojas
was convicted of the capital murder of a four-year-old boy, resulting from a
drive-by shooting.  In five issues,
appellant challenges his conviction alleging: (1) the evidence is legally and
factually insufficient; (2) he was improperly identified by a witness; and (3)
the jury was subjected to outside influence. 
Because appellant was a juvenile at the time of the offense, the trial court
sentenced him to imprisonment for life. 
We affirm.








I.  Factual and Procedural Background

On the
evening of July 15, 1998, Alvaro Cabrera went outside his apartment to put new
license plates on his vehicle.  It was
shortly after 7:00 p.m. and still light outside.  Cabrera=s
four-year-old son followed him outside. 
While Cabrera was working on his vehicle, his son played near a couch
under the stairwell where a young man that he knew, Oscar Davalos, was visiting
with several other young men and a young woman. 
Several of those young men were gang members.  

After about ten minutes, a blue
mini-van with three occupants drove rapidly into the parking lot at the
apartment complex.  The occupants yelled
and made what appeared to be gang signs with their hands out the windows of the
mini-van.  Several shots were fired by
the two passengers in the mini-van, and Davalos and the others quickly hid
behind the couch.  Davalos testified that
two of the bullets hit the brick wall just above his head.  Cabrera=s
four-year-old son, however, did not take cover behind the couch and was the
only one wounded by a bullet.  The child
was taken to the hospital by ambulance where he died later that evening.

Following the shooting, the
mini-van reversed direction quickly and exited the parking lot.  Cabrera tried to follow the mini-van.  Another resident of the apartment complex,
Jerardo Becerra, followed the mini-van to another apartment complex.  Becerra was able to drive close enough to the
mini-van to see the faces of its three occupants.  Approximately five days after the incident,
Becerra viewed three photographic line-ups, of five photographs each, and
tentatively identified appellant as one of the passengers in the mini-van.  

Shortly after the fatal shooting,
appellant left by bus for Mexico and does not appear to have returned to Texas
until 2002.  Maria Reyes, who helped rear
appellant, testified that appellant confessed he was in the mini-van and had
fired one of the guns, but did not know if the bullet from his gun had killed
the four-year-old boy.








II.  Issues
and Analysis

A.        Is
the evidence legally and factually sufficient to support appellant=s conviction for capital
murder?

 

Appellant contends that the evidence is legally
insufficient to support his conviction, because it fails to establish that he
had the specific intent to kill a child. 
Appellant further contends that the evidence is both legally and
factually insufficient to establish that he intended for someone to die.

In evaluating a legal-sufficiency challenge, we
view the evidence in the light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  The issue on
appeal is not whether we, as a court, believe the State=s
evidence or believe that appellants= evidence
outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt.  Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The jury, as the trier of fact, Ais the
sole judge of the credibility of the witnesses and of the strength of the
evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).








In contrast, when evaluating a
challenge to the factual sufficiency of the evidence, we view all the evidence
in a neutral light and inquire whether the jury was rationally justified in
finding guilt beyond a reasonable doubt. 
Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  A reviewing court may find the evidence
factually insufficient in two ways.  Id.
First, when considered by itself, the evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt.  Id. 
Second, after weighing the evidence supporting the verdict and the
evidence contrary to the verdict, the contrary evidence may be strong enough
that the beyond-a- reasonable-doubt standard could not have been met.  Id. at 484B85.  In conducting the factual-sufficiency review,
we must employ appropriate deference so that we do not substitute our judgment
for that of the fact finder.  Id.
at 481B82.  Our evaluation should not intrude upon the
fact finder=s role as the sole judge of the
weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
In conducting a factual-sufficiency review, we must discuss the evidence
appellant claims is most important in allegedly undermining the jury=s
verdict.  Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).

1.         Is the evidence legally sufficient to
convict appellant of capital murder?

In his first issue, appellant
contends that there is no evidence that he intended to kill a child, thus, even
under a theory of transferred intent, the evidence is legally insufficient to
support a conviction of capital murder. 
Specifically, appellant argues that capital murder requires specific
intent to kill, and there is no evidence that appellant or anyone in the
mini-van intended to kill a four-year-old child.  Appellant=s argument is based on section 19.03(a)(2) of the Texas Penal
Code, which states that a person commits capital murder if the person commits
murder under section 19.02(b)(1) and Athe person intentionally
commits the murder in the course of committing or attempting to commit
kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or
retaliation, or terroristic threat under [s]ection 22.07(a)(1), (3), (4), (5),
or (6).@ 
Tex. Penal Code '
19.03(a)(2) (emphasis added).  Appellant
urges that intent to murder an adult cannot be transferred to a four-year-old
child to satisfy the specific intent requirement for capital murder.








We disagree.  As the State points out in its appellate
briefing, the plain language of the statute for capital murder of a child under
the age of six does not require appellant to have intentionally killed the
child; rather, to find appellant guilty of capital murder, he need only have knowingly
killed the four-year-old victim. 
Capital murder, as it pertains to this case, requires the following: 

(a)       A person commits an offense if the person
commits murder as defined under Section 19.02(b)(1) and:

(8)       the person murders an individual under
six years of age.  

 

Tex.
Penal Code ' 19.03(a)(8).  Under section 19.02, a person commits murder
if he, Aintentionally
or knowingly causes the death of an individual.@  Tex.
Penal Code '
19.02(b)(1) (emphasis added). 
Accordingly, a person commits the offense of capital murder if he
intentionally or knowingly causes the death of an individual under six years of
age.  McCollister v. State, 933
S.W.2d 170, 172 (Tex. App.CEastland
1996, no pet.).  Thus, murder of a child
under the age of six is capital murder.

Because
the evidence is legally sufficient to support a conviction for murder of a
child under six years of age, any lack of specific intent to kill a person
under six years of age does not render the evidence legally insufficient to
support appellant=s
conviction for capital murder.  We
overrule appellant=s first
issue.  

2.         Is the evidence legally and factually
sufficient to prove that appellant intended for someone to die?

 

In
appellant=s second and third issues, he
contends that the evidence is legally and factually insufficient to establish
that he intended for the victim or another person to die.  Specifically, appellant contends that the
evidence fails to establish that he intended a death to result from his
conduct.








The
offense of capital murder is committed if a person intentionally or knowingly
causes the death of an individual under six years of age.  Id. 
Pertinent to this case, A[a]
person acts knowingly, or with knowledge, with respect to a result of his
conduct when he is aware that his conduct is reasonably certain to cause the
result.@  Tex.
Penal Code ' 6.03(b).

Although
witnesses saw only the front-seat passenger in the mini-van fire a gun,
appellant, the back-seat passenger, confessed that he was at the scene of the
murder, and that he fired his gun but did not know whether the bullet from his
gun was the one that had hit the child. 
Furthermore, evidence recovered from the scene of the shooting
established that two different guns were fired for a total of at least five
shots.  The record also contains evidence
that this shooting was in retaliation for an earlier, gang-related
shooting.  The evidence supports the
inference that appellant knew his shooting the gun in the general direction of
a group of people including the four-year-old victim was reasonably certain to
result in a death. We overrule appellant=s second
and third issues.

B.        Did the trial court err in denying
appellant=s motion to suppress the
in-court identification based on allegedly impermissibly suggestive
photographic line-ups?

 

In his
fourth issue, appellant contends that the trial court erred in denying his
motion to suppress Jerardo Becerra=s
in-court identification of appellant. 
Specifically, appellant argues that the trial court should have excluded
this evidence because it was tainted by an unduly suggestive photographic
line-up identification given that (1) Becerra knew that the police suspected
one of the men in each of the three photographic line-ups as being the men in
the mini-van fleeing from the murder scene, and (2) appellant stood out from
the others in the photographic line-ups.








Becerra
lived in the apartment complex where the shooting took place.  He testified that on July 15, 1998, he heard
some shots while in his second-floor apartment. 
Becerra then ran outside and saw three men in a mini-van, the front
passenger in possession of a pistol.  He
saw the man fire the pistol and then pursued the mini-van in his truck for
several miles to another apartment complex, where the police took over.  During the pursuit, Becerra pulled up along
side the mini-van and observed the driver and one side of the back-seat
passenger.

On July
20, 1998, Becerra was asked to view three photographic line-ups of five photos
each.  The photographs were all of young
males of similar race, height, build, and hair design.  Becerra tentatively identified the fifth photograph
in one of the spreads, the photograph of appellant, as the back-seat passenger
in the mini-van.  In the photo spread,
appellant was the only one with this head tilted upward.  The others were either looking straight ahead
or downward. 

In court,
Becerra initially testified that the police told him that the suspects= photos
were in the photographic line-ups. 
Shortly thereafter, Becerra testified that he was never told that the
suspects were definitely in the photographic line-ups.  Becerra=s further
testimony as to whether the police officer told him that the suspect=s
photograph was in the photographic line-ups continued to vary.  The police officer, Hector Riojas, who had
conducted the photographic line-ups, testified that he had no specific
recollection of what was told to appellant during the line-up over five years
before trial.  However, Officer Riojas
testified that his standard procedure was to explain to the witness that the
suspect may or may not be in the line-up. 
Homicide Detective Jose Selvera, who was present during the photographic
line-ups, testified that he specifically remembered that appellant was not told
that suspects were in the photographic line-ups.








On
appeal, appellant contends that the trial court erred in denying his motion to
suppress Becerra=s
in-court identification of appellant because it was tainted by an impermissibly
suggestive pre-trial photographic line-up identification of appellant.  To warrant the exclusion of Becerra=s
in-court identification, appellant had to show that the photographic line-up
identification procedure was impermissibly suggestive.  Santos v. State, 116 S.W.3d 447, 451,
455 (Tex. App.CHouston [14th Dist.] 2003, pet.
ref=d).  A pretrial procedure may be suggestive, but
that does not necessarily mean it is impermissibly so.  Barley v. State, 906 S.W.2d 27, 34
(Tex. Crim. App. 1995).  Suggestiveness
may be created in the manner in which the pretrial identification procedure is
conducted, for example, by police pointing out the suspect or suggesting that a
suspect is included in the line-up.  Id.
at 33.  A pretrial identification
procedure is not impermissibly suggestive, however, merely because a witness
may have believed one of the individuals in the line-up was a suspect.  Harris v. State, 827 S.W.2d 949, 959
(Tex. Crim. App. 1992); Abney v. State, 1 S.W.3d 271, 275 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d).

Although
there was conflicting testimony as to whether Becerra knew that someone in the
photographic line-ups was a suspect in the shooting, that fact did not make the
photographic line-up identification impermissibly suggestive.  A line-up is not rendered impermissibly
suggestive simply because a witness is told that the line-up includes a
suspect, because a witness would normally assume that to be the case.  Harris, 827 S.W.2d at 959. 

Appellant
further contends that the trial court should have excluded the in-court
identification because it was tainted by an unduly suggestive photographic
line-up identification given that appellant allegedly stood out from the others
in the photographic line-ups. 
Specifically, appellant argues that he was posed differently from the
others in that his head was tilted higher and he was looking directly into the
camera.

After review
of the record and the photographic line-up therein, we find nothing that rises
to the level of being impermissibly suggestive. 
The photographs are arranged in rows with three in the top row and two
in the bottom row.  Appellant=s
photograph is the last one in the bottom row. 
His head is tilted upward towards the middle photograph in the first
row.  The individuals are all male and of
similar age, race, size, build, and hair design.  Nothing in the evidence suggests that any
differences in the poses were intentional or for the purpose of encouraging
Becerra to select appellant=s
photograph.  Although it may be possible
to configure a photographic line-up in a way that might suggest a particular
identification, we do not find that the photographic line-up in this case was
impermissibly suggestive.








Even
assuming the pretrial photographic line-up was suggestive, it still would be
admissible because, in the totality of the circumstances, there is no
substantial likelihood of misidentification. 
See Webb v. State, 760 S.W.2d 263 (Tex. Crim. App.1988).  To determine the reliability of the in-court
identification testimony under the totality of the circumstances, the following
five factors should be considered:

(1)
      the opportunity of the witness to
view the criminal at the time of the crime; 

(2)
      the witness=s degree of attention; 

(3)
      the accuracy of the witness=s prior description of the
criminal; 

(4)
      the level of certainty demonstrated
by the witness at the time of the confrontation; and 

(5)
      the lapse of time between the
alleged act and the time of the confrontation. 

 

Manson v. Brathwaite, 432
U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); Ibarra v. State, 11
S.W.3d 189, 195 (Tex. Crim. App. 1999). 
First, we weigh these factors in a light favorable to the trial court=s ruling;
then we weigh the factors, viewed in this light, de novo Aagainst
the >corrupting
effect= of the
suggestive identification itself.@  Ibarra, 11 S.W.3d at 195B96.

The
record reflects that Becerra had sufficient opportunity to view the rear
passenger in the mini-van.  He followed
the mini-van and drove up alongside it specifically to see its occupants.  He saw the suspect in daylight.  Although Becerra only tentatively identified
appellant in the photographic line-up, he looked at fifteen photographs and never
misidentified or failed to identify him. 
Nor did Becerra=s
description of the suspect differ from appellant. Furthermore, the photographic
line-up took place only five days after the fatal shooting.  Thus, under the totality of the
circumstances, there is nothing to suggest a substantial likelihood of
misidentification could have resulted from the photographic line-up. 








Furthermore,
when an in-court identification is based upon knowledge independent from the
allegedly improper pre‑trial procedure, it is admissible.  See Santos v. State, 116 S.W.3d 447,
454 (Tex. App.CHouston [14th Dist.] 2003, writ
ref=d.).  Thus, because Becerra stated that he was able
to make his in-court identification independently from the photographic line-up
based on his independent recollection of seeing appellant in the mini-van, the
in-court identification is admissible.

We
conclude the out-of-court identification procedure was not impermissibly
suggestive, the in-court identification was made independently, and there is no
substantial likelihood of misidentification. 
Accordingly, we overrule appellant=s fourth
issue. 

C.        Did the trial court err in denying
appellant=s motion for a mistrial or
new trial based on an allegedly impermissible outside influence on the jury?

 

In his
fifth issue, appellant contends that he is entitled to a mistrial and/or a new
trial based on an alternate juror inadvertently joining the jury in the jury
deliberation room following the conclusion of appellant=s
trial.  We review the trial court=s
decisions to deny a mistrial and to deny a new trial for an abuse of
discretion.  Ladd v. State, 3
S.W.3d 547, 567 (Tex. Crim. App. 1999); Rent v. State, 982 S.W.2d 382,
384 (Tex. Crim. App. 1998).

The
record reflects that the alternate juror was in the deliberation room for
approximately fifteen minutes before the mistake was realized.  The alternate juror was immediately removed
from the jury deliberation room, and the jury was instructed to disregard
anything the alternate juror may have said and to begin deliberations
again.  Outside the jury=s
presence and without their knowledge, the trial court questioned the alternate
juror about his brief time in the jury deliberation room.  Thereafter, the trial court denied appellant=s request
for a mistrial.  Appellant then filed a
motion for a new trial.  The State
responded and admitted an affidavit from the jury foreperson.  After fully developing the facts surrounding
the unauthorized presence of the alternate juror, the trial court denied
appellant=s motion for a new trial.     








Article
36.22 of the Texas Code of Criminal Procedure states: No person shall be
permitted to be with a jury while it is deliberating.  No person shall be permitted to converse with
a juror about the case on trial except in the presence and by the permission of
the court.  Tex. Code Crim. Proc. Ann. art. 36.22 (Vernon Supp.
2004).  The purpose of this statute is to
preserve the confidentiality of the jury=s
deliberations so that the jurors may fully and freely discuss the case.  When jurors converse with unauthorized
persons about a case, injury to the accused is presumed.  Alba v. State, 905 S.W.2d 581, 587
(Tex. Crim. App. 1995).  The State,
however, may rebut this presumption of harm by showing that the case was not
discussed or that nothing prejudicial to the accused was said.  Id.

The
record fairly demonstrates that the information did not prejudice appellant and
that the State rebutted the presumption of harm.  The alternate juror testified that while he
was in the jury deliberation room, one of the jurors recommended a foreperson
whom a couple of jurors supported and to whom none objected.[1]  Thus, the alternate had no influence over who
was chosen as the foreperson. 
Thereafter, several jurors wanted to see the evidence again.  Although the alternate supported that
decision, several other jurors also supported the decision.  Thus, the evidence would have been reviewed
regardless of whether the alternate supported that decision.  The alternate testified that while the
evidence was being circulated, there were conversations amongst small groups of
jurors.  The alternate did not provide
any answers to questions raised about the evidence.  The evidence was still being circulated
amongst the jurors when the alternate was removed from the jury room.








The
foreperson testified in his affidavit that the jurors did not have a formal
vote on the foreperson; rather, there was a general consensus that he should be
the foreperson.  He testified that
several jurors then wanted to see the evidence, so he requested it and
circulated it around the room.  The
foreperson testified in his affidavit that, AWe never
talked about the case or took a vote until after the alternate had been taken
out of the jury room.@  The presence of the alternate juror for
fifteen minutes clearly did not prejudice appellant in that actual
deliberations had not yet begun and the alternate did not influence any
decisions by the jury.  The same
foreperson would have been chosen, and the jury would have asked to look at the
evidence regardless of whether the alternate was present.

The
evidence reflects that the presence of the alternate juror did not influence or
prejudice any of the jurors. Accordingly, from this record, we cannot say that
the trial court abused its discretion in denying appellant=s motion
for mistrial and motion for a new trial.  We overrule issue five.

Having
overruled all of appellant=s issues,
we affirm the trial court=s
judgment. 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion filed July 21, 2005.

Panel consists of Justices Anderson, Frost, and
Seymore.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  When asked if
he voted for the foreperson, the alternate juror replied,

 

No, I don=t think
there was a formal vote, although I did ask if B someone
asked whether anyone wanted to volunteer. 
And nobody volunteered.  And then
somebody recommended somebody and there was a couple of supporting yeses and
nobody raised any objections, so.

* * *

That person was elected.