Opinion Issued November 8, 2007
















Opinion Issued November 8, 2007

 

 

 

 

 

 








 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00809-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



DENNIS HAROLD GRIFFIN,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from the 248th District Court

Harris County, Texas

Trial Court Cause No. 1068569

 








 



MEMORANDUM OPINION

          Appellant
Dennis Harold Griffin pleaded not guilty to the felony offense of aggravated
sexual assault of a child. See Tex. Pen. Code Ann. § 22.021.
 The jury found Griffin guilty and, upon finding true two
enhancements included in the indictment, assessed punishment at thirty years’
confinement.  In three issues, Griffin contends that the
evidence is legally and factually insufficient to support a guilty verdict and
that he was unfairly prejudiced by a tainted in-court identification.  We affirm.

Background

          In
2005, when S.R. was thirteen years old, she lived with her grandmother, who was
her legal guardian and cared for her most of her life.  S.R. had been diagnosed at a young age with
ADHD and bi-polar disorder, and attended a special school to help with her
learning and developmental disabilities. 
Her grandmother testified that, at thirteen years old, S.R. had the
mental capacity of a seven-year-old.

          In
early 2005, Griffin,
a thirty-seven-year-old, made contact with S.R. on an adult phone chat line
while her grandmother was at work.  Griffin told S.R. that his
name was Stefan and that he was eighteen years old.  S.R. told Griffin that she was seventeen years old and
gave him her phone number, and they talked on the phone several times. 

          On
February 7, 2005, at 6:00 a.m., S.R. left her house to meet Griffin, taking her grandmother’s car and
cell phone without permission.  With Griffin on the phone directing her, S.R. drove across town
and eventually met Griffin
in a parking lot.  Although she realized
he was older than eighteen, S.R. allowed Griffin
to drive her, in her car, to his apartment. 
Shortly after arriving, they went to Griffin’s
bedroom and Griffin
had sexual intercourse with S.R.  

          S.R.
stayed at Griffin’s
apartment for four weeks, during which time he had sexual intercourse with her
on several occasions.  S.R.’s grandmother
filed a missing person’s report, as well as a stolen vehicle report.  While staying at Griffin’s
apartment, S.R. sometimes left by herself and sometimes went out with Griffin.  S.R. met Griffin’s fiancée multiple times and even
drove her to work twice.  Sometime during
the four weeks that S.R. was at Griffin’s apartment, she returned to her
grandmother’s house and removed several items, which she intended to pawn for
money.  On March 1, 2005, one of Griffin’s cousin’s drove
S.R. (in his own car) back to her grandmother’s house.  

          Shortly
after S.R. recounted to her grandmother what had occurred, S.R.’s grandmother
took her to Texas Children’s Hospital where medical professionals examined
her.  The sexual assault nurse did not
see physical evidence of abuse.  The
nurse noted a white discharge in the vaginal area and collected swabs.  The anal swab tested positive for semen in
tests done by a Houston Police Department serologist, but it contained an
insufficient amount of DNA to make a comparison.

          The same
day that S.R. returned home, HPD Officer Pena stopped a car that had been
reported stolen and linked to a juvenile runaway.  The car was S.R.’s grandmother’s car.  The car’s driver reported an address where he
had seen S.R. with Griffin
and described him.  Officer Pena went to
the residence, but no one was home. 
Based on this information, Officer Smith created a photo array, which
included Griffin’s
driver’s license photo.

          In April
2005, S.R. and her grandmother visited the Children’s Assessment Center,
where a caseworker showed the photo array to S.R.  The Assessment worker did not caution S.R.
that the person who assaulted her might not be in the photo array.  Rather, the Assessment worker asked her to
identify which man she called “Stefan.” S.R. identified Griffin’s driver’s license photograph.  The police issued a warrant for Griffin.  Shortly thereafter, police stopped Griffin for a traffic
violation. Griffin
identified himself to the officer as Stefan Griffin.  The officer positively identified him as
Dennis Harold Griffin and arrested him.

          S.R.
testified, but had difficulty in remembering answers to many questions asked of
her. She testified to facts that are inconsistent with her prior statements in
interviews with police officers and medical personnel. She could not remember
the location of Griffin’s
apartment, its description, the length of her stay, or the number of times they
had sexual intercourse.  S.R. did not
recall meeting Griffin’s
fiancée, nor did she remember the names of his friends.  S.R. provided few specific details, but made
clear that she had sexual intercourse with Griffin.

Several witnesses testified that
they observed S.R. with Griffin
during the four weeks in question. One of them, Griffin’s
fiancée, Betty Johnson, testified that she had met Griffin on a chat line in 2004 and that he
had used the name Stefan.  She stated
that Griffin lived
with her in February and March of 2005, and that S.R. never stayed overnight
with them.  However, she testified that
she saw S.R. and Griffin together during that
time, that S.R. had driven her to work on multiple occasions, and that she
never saw S.R. out of Griffin’s
presence.

Legal and Factual Sufficiency

          Griffin contends that the evidence is
legally and factually insufficient to support a guilty verdict due to a lack of
physical evidence and corroborating testimony.

A. Standard of Review

When evaluating the legal sufficiency
of the evidence, we view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795,
798 (Tex.
Crim. App. 2005).  The standard is the
same for both direct and circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  We do not
resolve any conflict of fact, weigh any evidence, or evaluate the credibility
of any witnesses, as this was the function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991).  

When evaluating factual sufficiency,
we consider all the evidence in a neutral light to determine whether the jury
was rationally justified in finding guilt beyond a reasonable doubt.  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We will set the verdict aside
only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and preponderance
of the evidence.  Johnson v. State,
23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  Under the first prong
of Johnson, we cannot conclude that a verdict is “clearly wrong” or
“manifestly unjust” simply because, on the quantum of evidence admitted, we
would have voted to acquit had we been on the jury.  Watson, 204 S.W.3d at 417. 
Under the second prong of Johnson, we cannot declare that a
conflict in the evidence justifies a new trial simply because we disagree with
the jury’s resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id.  We must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim.
App. 2003).  

B. 
Sexual Assault of a Child

          A
person commits the offense of sexual assault of a child if the actor
intentionally or knowingly causes the penetration of the sexual organ of a
child by any means. Tex. Pen. Code Ann. §
22.021(a)(1)(B).  A “child” is defined as
a person younger than seventeen years of age who is not the spouse of the
defendant.  Tex. Pen. Code Ann. § 22.011(c)(1).  Sexual assault of a child is aggravated when
the victim is younger than fourteen years of age.  Tex. Pen. Code Ann. §
22.021(a)(2)(B).  The State does not have
to prove that the defendant knew the victim was younger than fourteen years of
age.  See Vasquez
v. State, 622 S.W.2d 864, 865 (Tex. Crim. App. 1981) (State does not have
to prove Appellant knew victim was under seventeen years of age, because that
would recognize defense of ignorance or mistake, contrary to legislative
intent); see also
Jackson v. State, 889 S.W.2d 615, 617 (Tex.
App.—Houston [14th
Dist.] 1994, writ ref’d) (“The State has long denied the defense
of ignorance or mistake in relation to sexual offenses involving children.”).

C. Legal Sufficiency

          Griffin contends
that the evidence is legally insufficient to support a guilty verdict because
no medical evidence of a sexual assault exists, no physical evidence exists
identifying him as the perpetrator, and “the record shows multiple problems
with the credibility and reliability of [S.R.] as a witness.”

Griffin’s
assertions notwithstanding, the uncorroborated testimony of a sexual assault
victim under fourteen years of age is alone sufficient to warrant a conviction,
without medical or physical evidence. See
Tex.
Code Crim. Proc. Ann. § 38.07 (Vernon Supp. 2006); see also Sandoval v. State, 52 S.W.3d 851, 854 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d); Garcia v. State, 563 S.W.2d 925, 928
(Tex. Crim. App. 1978) (victim’s testimony alone was sufficient evidence of
penetration and sufficient to identify defendant as assailant without medical
evidence). 

          In a legal sufficiency analysis, we view
the evidence in a light most favorable to the State, and therefore do not
evaluate the credibility of witnesses.  See Dewberry, 4 S.W.3d at 740.   Under this standard, the record shows that Griffin had sexual intercourse with S.R. multiple times
and that S.R. identified Griffin
in court as the assailant.  We therefore hold that the evidence
is legally sufficient to support the verdict.

D. Factual Sufficiency

Griffin asserts
that the evidence is factually insufficient for the same reasons that he claims
the evidence is legally insufficient.  Griffin points to S.R.’s
testimony that he claims was unreliable due to her lack of memory regarding
certain facts, inconsistencies in her story, and her motive to lie.

The fact-finder alone determines the
weight to place on contradictory testimonial evidence because that
determination depends on the fact-finder’s evaluation of credibility and
demeanor.  Cain v. State, 958
S.W.2d 404, 408–09 (Tex. Crim. App. 1997). 
As the determiner of the credibility of the witnesses, the fact-finder
may choose to believe all, some, or none of the testimony presented.  Id.
at 407 n.5.  The fact-finder is the
exclusive judge of the witnesses’ credibility and the weight to be given to
their testimony.  Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
As an appellate court, we must avoid re-weighing the evidence and
substituting our judgment for that of the fact-finder. Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998);
see also Wilson
v. State, 863 S.W.2d 59, 65 (Tex.
Crim. App. 1993); King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).

The defense had the opportunity to
expose any inconsistencies in S.R.’s testimony and the jury was free to
evaluate S.R.’s testimony and believe some, all, or none of it. See Glockzin v. State, 220 S.W.3d 140,
147 (Tex. App.—Waco 2007, pet. ref’d) (“the jury was free to accept [victim’s]
testimony over that of other witnesses, including [defendant], and disregard
any ‘inconsistencies’”); see also Perez v. State, 113 S.W.3d 819, 838–39 (Tex. App.—Austin
2003, pet. ref'd).  Griffin contends that S.R. lied to prevent
getting in trouble with her grandmother for running away.  However, a motive to lie does not overcome a
victim’s testimony, if the jury chooses to believe that testimony. See Dalgleish v. State, 787 S.W.2d 531,
534 (Tex. App.—Beaumont 1990, writ ref’d) (rejecting insufficiency challenge, although
defendant argued minor’s version was not worthy of belief.)  We must defer to the jury’s findings.  “A jury decision is not manifestly unjust
merely because the jury resolved conflicting views of evidence in favor of the
State.”  Herrero v. State, 124 S.W.3d 827, 835 (Tex.
App.—Houston
[14th Dist.] 2003, no pet.) (quoting Cain,
958 S.W.2d at 410).  We note that some
physical evidence supports S.R.  The
nurse found semen in S.R.’s vaginal area, which corroborates S.R.’s account
that sexual intercourse occurred. 
Furthermore, several witnesses saw Griffin
and S.R. together.  The State’s evidence
was not so obviously weak or contrary to the overwhelming weight of the
evidence as to be factually insufficient. 
We hold that factually sufficient evidence supports the verdict.

 

Identification

Griffin further contends that he was
unfairly prejudiced by an in-court identification, which is tainted by an
impermissibly suggestive pre-trial photographic identification. In support, Griffin observes that the
social worker, who conducted the photographic identification, did not admonish
S.R. that her offender’s photograph may not be included. 

A. Background

Houston Police Department Officer
Smith compiled an array that contained Griffin’s
driver’s license photo, along with photos of six other similar looking
males.  Griffin does not contend that the array’s
layout was suggestive.  Officer Smith
gave the photo array to the social worker who interviewed S.R.  Officer Smith testified that although it is
normal police procedure to tell a witness that the perpetrator may or may not
be included in the photo array, the social worker did not so caution S.R.  Instead, the social worker showed S.R. the photo
array and asked her to point out the man with whom she had sexual
intercourse.  S.R. identified Griffin as the
perpetrator.  Officer Smith showed the
photo array to S.R. again after she finished her interview with the social
worker, and asked her to be sure that Griffin
was the man with whom she had intercourse. 
S.R. again identified Griffin
and signed her name below his photograph. 
At no time did either the social worker or Officer Smith suggest the man
who was their suspect.

          The
trial court ruled that the photographic identification was not suggestive, but
the State chose not to offer it into evidence. 
Officer Smith testified that S.R. correctly identified Griffin in the photo array. While on the
stand, S.R. identified Griffin
at trial.

B. Standard of Review

When challenging the admissibility of
a pre-trial identification, a defendant has the burden to show, by clear
and convincing evidence based on the totality of the circumstances, that the
pre-trial identification procedure was impermissibly
suggestive, and that it created a substantial likelihood
of irreparable misidentification.  Barley
v. State, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995).  If a court finds that a pre-trial
identification procedure was impermissibly suggestive, it must then consider the factors enumerated in Neil v.
Biggers to determine whether the suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification.  409 U.S.
188, 199, 93 S. Ct. 375, 382 (1972).  

If the suggestiveness of the pre-trial
identification procedure turns on the evaluation of the credibility and
demeanor of the witnesses, it is a mixed question of law and fact, and we give
almost total deference to the trial court’s findings.  Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Loserth v. State,
963 S.W.2d 770, 772 (Tex. Crim. App. 1998). 

C. Pre-trial Photographic Identification

          “Suggestiveness
may be created by the manner in which a pretrial identification procedure is
conducted, for example, a police officer may point out the suspect or suggest
that a suspect is included in a lineup or photographic array.” Barley,
906 S.W.2d at 33.  However, “a pre-trial
identification procedure is not impermissibly suggestive merely because a witness may have believed one of the
individuals was a suspect.”  Abney v.
State, 1 S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d);
see also Harris v. State, 827 S.W.2d 949, 959 (Tex. Crim. App.
1992).  The social worker’s failure to
properly admonish S.R. alone does not itself render the pre-trial
identification impermissibly suggestive because “a complaining witness normally assumes that a
photographic array includes a suspect.”  Burkett v. State, 127 S.W.3d 83, 88
(Tex. App.—Houston
[1st Dist.] 2003, no pet.); see also Johnson v. State, 901
S.W.2d 525, 534 (Tex. App.—El Paso 1995, pet. ref’d).  Griffin
asserts, however, that this case can be distinguished because S.R. was
vulnerable to suggestion, and felt that she was required to identify someone,
as evidenced by her testimony:  

Q: Did they tell you
that you had to pick somebody from that set of photographs?

 

A: Yes.

 

Q: Did they tell you that you had to pick somebody?

 

A: Well, no, they told me which one, like.

 

Q: Did they tell you
that the person was guaranteed to be in that set of pictures?

 

A: No.

 

Q: Did they in any way, the detective
ever point to the person that he wanted you to pick?

 

A: No.

 

* * *

 

Q: Did he ever indicate which person in
that photo spread he wished for you to pick?

 

A: No.

 

Q: I’ll come back.  Did he ever tell you you had to pick somebody
in that set of pictures?

 

A: Yes.

 

Q: He did tell you you had to pick somebody?

 

A: Well, no.

 

The Court: What did he tell you?

 

A: He told me which one of these persons
is the, you know, dude that I was with.

 

Although S.R.’s testimony is
contradictory, there is evidence in the record to suggest that S.R. was not
compelled to make an identification; we defer to the trial court’s
determination of the credibility of S.R.’s testimony.  Estrada
v. State, 154 S.W.3d 604, 607 (Tex.
Crim. App. 2005); Guzman, 955 S.W.2d
at 89.  We thus hold that Griffin has not met his
burden to show by clear and convincing evidence that the failure to admonish
S.R. caused the identification to be impermissibly suggestive.  As a result, we do not reach the issue of whether
the in-court identification was tainted under the Biggers factors.  

Conclusion

          We
hold that the evidence is legally and factually sufficient to support the
conviction.  We further hold that Griffin did not provide
clear and convincing evidence that the pre-trial photo array was impermissibly
suggestive.  We therefore affirm the
judgment of the trial court.

 

 

                                                                             Jane Bland

                                                                             Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).